```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAVORIS EVANS,

                        Plaintiff,           12-CV-6002

              v.                             DECISION
                                             and ORDER
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.
_____
```

## INTRODUCTION

Plaintiff Lavoris Evans ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI"). Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his application for benefits was not supported by substantial evidence and was contrary to applicable legal standards.

Plaintiff has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)") and 42 U.S.C. 405(g) seeking to reverse the Commissioner's decision or, in the alternative, to remand the matter for reconsideration of the evidence. The Commissioner has cross-moved for judgment on the pleadings pursuant to 42 U.S.C. § 405(g) on the grounds that the ALJ's decision was supported by substantial evidence and was legally correct.

For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, this Court hereby grants the Commissioner's motion for judgment on the pleadings.

## BACKGROUND

Plaintiff filed an application on February 7, 2009, for SSI claiming a disability since August 25, 2008, due to sciatica and piriformis syndrome-a neuromuscular disorder in the leg.  At the time he filed his application, Plaintiff was thirty-eight years old and had performed past work as a laborer in waste management and in customer services at a phone company.  Plaintiff's application was denied by the Social Security Administration ("the Administration") on April 17, 2009.  On May 29, 2009, Plaintiff filed a written request for a hearing.

Plaintiff appeared for the hearing, with counsel, before ALJ Barry Peffley on August 18, 2010. The ALJ appeared via videoconference.  Richard M. Smith, a vocational expert, testified by phone at the hearing.  In a decision dated September 20, 2010, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on November 18, 2011. On December 30, 2011, Plaintiff filed this action.

**DISCUSSION**

I.  **Jurisdiction and Scope of Review**

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. This section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938); see also Moore v. Sec'y of Health and Human Services, 778 F.2d 127, 130 (2d Cir. 1985). Section 405(g) thus limits the Court's scope of review to determining whether the Commissioner's findings were supported by substantial evidence, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (stating that a reviewing court does not decide a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the record, the Court is convinced that Plaintiff has not set forth a plausible claim for

relief, judgment on the pleadings may be appropriate. See <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).

**II. The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

In his decision, the ALJ adhered to the five-step sequential analysis for evaluating Social Security disability benefits claims, which requires the ALJ to consider the following factors:

> (1) whether the claimant is engaged in any substantial gainful work activity;
>
> (2) if not, whether the claimant has a severe impairment that significantly limits his ability to work;
>
> (3) whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4; if so, claimant is considered disabled;
>
> (4) if not, the ALJ determines whether the impairment prevents the claimant from performing past relevant work; if the claimant has the residual functional capacity to do his past work, he is not disabled;
>
> (5) even if the claimant's impairment or combination of impairments prevents him from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

See 20 C.F.R. §§ 404.1520 (a)(i)-(iv) and 416.920(a)(4)(i)-(iv).

At Step One of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Transcript of Administrative Proceedings ("Tr.") at 15). At Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc

disease, back pain, leg pain, and leg numbness. (Tr. at 15). At Step Three, the ALJ concluded that although severe, the Plaintiff's impairments did not meet or equal, alone or in combination, the criteria listed in Appendix 1, Subpart P of Regulation No. 4. (Tr. at 15). The ALJ noted specifically that he considered listing 1.04 (disorders of the spine), but he found that the medical evidence did not support listing-level severity. (Tr. at 15).

At Step Four, the ALJ found that Plaintiff's past work in customer services and as a laborer in waste management exceeded the exertional requirements of his residual functional capacity, and therefore, Plaintiff could not perform his past relevant work. (Tr. at 19). The ALJ concluded that Plaintiff, despite his impairments, retained the residual functional capacity to perform sedentary work, except that he would need to be able to sit or stand alternatively, but that he would not need to leave the workstation. Additionally, the ALJ found that Plaintiff could only occasionally use ramps and climb stairs, but he could never climb ladders, ropes, or scaffolds. Plaintiff also could balance, stoop, kneel, crouch, bend, or crawl occasionally. Finally, the ALJ determined that Plaintiff must avoid concentrated exposure to operational control of moving machinery and unprotected heights. (Tr. at 15).

At Step Five, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, a significant number of jobs existed in the national economy that

Plaintiff could perform, such as an assembler of small parts and an order clerk. (Tr. at 19-20). Accordingly, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 20).

Based on a review of the entire record, I find that the ALJ properly concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

**A.   The ALJ properly determined that Plaintiff did not meet the listing requirements for Listing 1.04A.**

Plaintiff claims that the ALJ committed legal error in finding that Plaintiff's impairments do not meet the requirements of Listing 1.04. (Pl. Mem. of Law at 10-13). I find, however, that the ALJ's determination is supported by substantial evidence found in the record.

To be considered disabled under Listing 1.04A, Plaintiff must demonstrate evidence of a disorder of the spine that results in the compromise of a nerve root or the spinal cord that also includes evidence of nerve root compression characterized by neuro-anatomic distribution of pain; limitation of motion of the spine; motor loss accompanied by sensory or reflex loss; and, if there is involvement of the lower back, positive straight-leg raising test (both sitting and supine). 20 C.F.R. Part 404, Subpart P, Appendix 1.

Here, the ALJ specifically noted that he had considered listing 1.04, but that the medical evidence did not support listing-level severity. (Tr. at 15). He also found that "no

acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (Tr. at 15).

Before Plaintiff's back surgery in November 2009, Plaintiff suffered from some of the symptoms found in Listing 1.04A. The medical record shows some diminished range of motion, some instances of positive straight-leg raising, and some slightly diminished sensation on the left side. (Tr. at 205, 233, 242). However, these clinical findings were never consistent. For example, Plaintiff's treating physician, Dr. Lisa Hauk found in January of 2009 that Plaintiff's sensation was grossly intact. (Tr. at 205). Additionally, in March of 2009, Dr. Hauk, found that Plaintiff's symptoms were improving. (Tr. at 202). Dr. George Sirotenko, who consultatively examined Plaintiff in April of 2009, found that Plaintiff had full range of motion in the cervical spine, upper extremities, hips, knees, and ankles. (Tr. at 209). He also found that Plaintiff's lower extremity strength was only slightly diminished. (Tr. at 209). Dr. William Cotanch, who examined Plaintiff for an independent neurosurgical evaluation, found in June of 2009 that Plaintiff's range of motion of the neck and upper extremities was normal. (Tr. at 269). He also noted that Plaintiff's strength, sensation, and reflexes were also normal. (Tr. at 269).

Post-surgery, Plaintiff could dorsiflex his foot at the ankles with ease, motor strength was full in the lower extremities, his gait was normal, and straight-leg raising tests were normal. (Tr. at 255-57).  Diagnostic tests showed no evidence of instability. (Tr. at 254, 255).  Plaintiff's treating physician, Dr. Clifford Everett, even found that Plaintiff's radicular pain complaint had been resolved completely. (Tr. at 238).  In April 2010, the surgeon who performed Plaintiff's back surgery, Dr. Robert Molinari, found that Plaintiff's motor strength in the lower extremity muscle groups was full, Plaintiff's sensation was intact to light touch, and Plaintiff's knee and ankle reflexes were normal. (Tr. at 252).  X-rays of Plaintiff's lumbar spine from April 2010 were "suspicious" for disc herniation/protrusion, but there was only minimal evidence of impression on the thecal sac. (Tr. at 251).

Based upon all the medical evidence in the record, the Court finds that the ALJ correctly determined that Plaintiff does not meet the requirements under Listing 1.04.

**B. The ALJ's residual functional capacity finding is supported by substantial evidence in the record.**

Plaintiff claims that the ALJ's residual functional capacity finding is not supported by substantial evidence.  After considering the medical evidence in the record and Plaintiff's testimony, the ALJ found that Plaintiff retained the residual functional capacity for sedentary work as defined by 20 C.F.R.

416.967(a). However, the ALJ found that due to his impairments, he "should work in a job where he is able to sit or stand alternatively." (Tr. at 15). I find that the record provides substantial evidence to support the ALJ's residual functional capacity finding.

In April 2009, state disability analyst M. Hessberger, after a review of the medical record, found that Plaintiff could occasionally lift ten pounds, could stand for at least two hours of an eight hour working day, could sit for at least six hours of an eight hour working day, and had no limitations in pushing or pulling. (Tr. at 213). Dr. Sirotenko, also in April of 2009 found that Plaintiff had full range of motion in the cervical spine, upper extremities, hips, knees, and ankles. (Tr. at 209). He noted that Plaintiff's lower extremity strength was only slightly diminished. (Tr. at 209). Dr. Sirotenko opined that Plaintiff should avoid prolonged standing and walking. (Tr. at 210). Additionally, Dr. Sirotenko opined that Plaintiff should avoid repetitive lumbar spine forward flexion, extension, and rotation. (Tr. at 210).

After decompressive surgery in November 2009, Dr. Molinari noted that Plaintiff was recovering "nicely," and that his pain and symptoms were significantly improved. (Tr. at 256). Plaintiff's muscle strength in the lower extremities was full, reflexes were unimpaired, and Plaintiff's gait was normal. (Tr. at 254). In

April 2010, Plaintiff was noted to be in no acute distress and was observed ambulating easily. (Tr. at 252).  Dr. Everett even found that Plaintiff's surgery had completely resolved Plaintiff's radicular complaint. (Tr. at 238).  Dr. Molinari also found that surgery had resolved Plaintiff's leg pain. (Tr. at 252).  Plaintiff still complained of lower back pain and some pain in his lower extremities, (Tr. at 238-39, 252), but after an evaluation at the Physical Therapy Center at Strong Memorial Hospital in April of 2010, Plaintiff's rehab potential was marked as "good." (Tr. at 246).

This evidence supports the ALJ's finding that Plaintiff retained the residual functional capacity to perform sedentary work with the restrictions as noted by the ALJ.

## C. The ALJ did not err in evaluating the medical opinions in the record.

Plaintiff argues that the ALJ's residual functional capacity determination, insofar as it is contrary to the opinion of treating physician Dr. Hauk, is inconsistent with the treating physician rule.  The Court is not persuaded by this argument.

An ALJ is generally required to give deference to the medical findings and reports of the physician who has provided primary treatment to the patient. Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); see also 20 C.F.R. § 404.1527(d)(2).  However, where the opinion of the treating physician is not consistent with other substantial evidence in the medical record, the opinion may

be given less than controlling weight. <u>Veino v. Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002). When determining what weight should be given to the treating physician's opinion, the ALJ must evaluate: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." <u>Schaal v. Apfel</u>, 134 F.3d 496, 503 (2d Cir. 1998)(citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

Here, Dr. Hauk had provided treatment to the plaintiff for only one month prior to filling out the Residual Functional Capacity Questionnaire. (Tr. at 271). Furthermore, although Dr. Hauk determined that Plaintiff would need to lie down during the workday in addition to taking normal work breaks, nothing in Dr. Hauk's treatment notes is consistent with such a limitation. <u>See</u> (Tr. at 202-205). Dr. Hauk found indications and symptoms that were consistent with the record, but conspicuously absent–outside of Plaintiff's own description of the injury–is any indication from Dr. Hauk that lying down would help alleviate Plaintiff's pain. (Tr. at 204). In addition, Dr. Hauk only prescribed Wal-profen and Flexeril for the pain. (Tr. at 205).

Moreover, there is evidence in the record that is inconsistent with Dr. Hauk's opinion. For instance, in April of 2010, the Physical Therapy Center at Strong Memorial Hospital noted that

although Plaintiff's symptoms worsened with sitting, standing, and walking, Plaintiff's symptoms were not "better" with lying down. (Tr. at 245). In fact, Dr. James Hildebrand, D.C. noted that Plaintiff's discomfort was aggravated by lying down. (Tr. at 231).

As to Dr. Hauk's opinion that Plaintiff was "currently considered to be totally disabled," (Tr. at 271), I find that the ALJ was correct in noting that the ultimate issue of Plaintiff's legal disability is an issue reserved for the Commissioner. (Tr. at 18); see Snell v. Apfel, 177 F.3d 128 (2d Cir. 1999)(finding that whether a claimant is disabled is reserved to the Commissioner); SSR 96-5p(stating that the responsibility for deciding whether an individual is disabled under the Social Security Act is reserved to the Commissioner).

Plaintiff also argues that the ALJ erred in the weight assigned to Dr. Sirotenko's opinion. The ALJ found that Dr. Sirotenko's opinion was supportive of the ALJ's residual functional capacity assessment, and the ALJ clearly stated that insofar as Dr. Sirotenko's opinion was consistent with the residual functional capacity, it was given significant weight. (Tr. at 18). I find that the ALJ did not err in this regard.

In April 2009, Dr. Sirotenko concluded that Plaintiff suffered from low back pain with features of left lower extremity radiculopathy. (Tr. at 209). He also found that there were some features of beginning atrophy of the left lower extremity, as well

as associated weakness. (Tr. at 210). However, Dr. Sirotenko noted that Plaintiff had a full range of motion in the cervical spine, shoulders, elbows, forearms, wrists, hips, knees, and ankles. (Tr. at 209). Additionally, Plaintiff had 4/5 strength in his left lower extremity. (Tr. at 209). Finally, Dr. Sirotenko noted that Plaintiff appeared to be in no acute distress. (Tr. at 209).

Dr. Sirotenko opined that Plaintiff should avoid prolonged standing, walking, stairs, inclines, or ladders on a repetitive basis. (Tr. at 210). Dr. Sirotenko also opined that Plaintiff should limit repetitive lumbar spine forward flexion, extension, and rotation. (Tr. at 210).

None of these limitations would preclude Plaintiff from being able to perform sedentary work. 20 C.F.R. 416.967(a). Additionally, Dr. Sirotenko's opinion was consistent with the balance of the medical record. Accordingly, the ALJ did not err in giving significant weight to Dr. Sirotenko's opinion in his residual functional capacity assessment.

Insofar as there was medical evidence in the record inconsistent with portions of Dr. Hauk's opinion, the ALJ was entitled to give those portions of her opinion less than controlling weight. Additionally, the Court finds that the ALJ did not err in weighing the opinion of Dr. Sirotenko.

**D. The ALJ had no additional duty to re-contact Plaintiff's treating physicians.**

Plaintiff argues that the ALJ erred by failing to request treating source opinions regarding Plaintiff's function-by-function limitations from two of Plaintiff's treating physicians, Dr. Everett and Dr. Molinari. (Pl. Mem. of Law at 19).

An ALJ is required to "re-contact" a claimant's physician for additional information regarding plaintiff's impairments when the evidence from a claimant's treating physician is inadequate for the ALJ to determine whether the claimant is disabled. 20 C.F.R. §416.912(e)(1).[1] However, where "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Crawley-Nunez v. Astrue, 08-CV-0295-A, 2009 WL 5171880, at *6 (W.D.N.Y. Dec. 22, 2009) (citing Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir.1999)).

Here, the record is replete with extensive treatment notes from treating physicians Dr. Hauk, Dr. Everett, and Dr. Molinari and multiple consultative examinations all opining on Plaintiff's

---

[1] Effective March 26, 2012, the Commissioner amended 20 C.F.R. §416.912 to remove the duty imposed on an ALJ in former paragraph (d) to re-contact a disability claimant's treating physician under certain circumstances. The Commissioner's directives as to how an ALJ will consider evidence are now found at 20 C.F.R. §416.920b. Here, however, the Court will apply the version in effect when the ALJ adjudicated Plaintiff's disability claim, §416.912(e).

impairments and his functional limitations.  Accordingly, I find that there are no gaps in the medical record, and that the evidence from Plaintiff's treating sources and the consultative physicians constitutes substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled.  See 20 C.F.R. § 416.913(b)(6).  Therefore, I find that the ALJ did not err by failing to re-contact Plaintiff's treating physicians.

### E. The ALJ properly evaluated Plaintiff's credibility.

Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's credibility.  The credibility of witnesses, including the claimant, is primarily determined by the ALJ and not the courts.  Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1982) (citations omitted).  The Social Security regulations provide that "in determining the credibility of the individual statements, the adjudicator must consider the entire record."  SSR 96-7p.  The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible to the extent that they [were] inconsistent with the above residual functional capacity assessment." (Tr. at 16).  Contrary to Plaintiff's allegations, I find that the ALJ's statement that Plaintiff's symptoms were not credible to the extent that they were inconsistent with the residual functional capacity finding is not erroneous.

Here, Plaintiff's residual functional capacity was based on all the evidence in the record, which included not only the opinions of the examining and consulting physicians, but also Plaintiff's subjective complaints, treatment history, activities of daily living, and other factors as enumerated at 20 C.F.R. § 416.929(c)(3). (Tr. at 16-18).

Plaintiff lived alone and needed no special help or reminders. (Tr. at 177, 179). Plaintiff also claimed that he had no problem getting along with others and that he had no problems with paying attention. (Tr. at 182-83). Plaintiff could wash dishes, do light cooking and cleaning, and bathe and dress himself. (Tr. at 33, 208). Although he testified that driving was a problem for him, he was capable of driving himself to medical appointments. (Tr. at 32, 231).

Post-surgery, Plaintiff's treatment was minimal, consisting of physical therapy, as needed, and over-the-counter ibuprofen and non-steroidal anti-inflammatories, also as needed. (Tr. at 255). On numerous occasions, it was noted that surgery and treatment post-operatively helped resolve his leg pain and symptoms. (Tr. at 252, 255, 256). As recent as April 2010, treating sources assessed that Plaintiff's "rehab" potential was "good." (Tr. at 246).

This Court is compelled to uphold the ALJ's decision discounting a claimant's testimony if the finding is supported by substantial evidence, as it is here. Aponte v. Secretary of

Department of Health and Human Services, 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted). Accordingly, based on the above, I find that the totality of the evidence in the record supports the ALJ's assessment of Plaintiff's credibility.

### F. The ALJ posed a complete hypothetical to the vocational expert.

Plaintiff argues that the ALJ provided the vocational expert with an incomplete hypothetical that omitted some of Plaintiff's limitations, which yielded job recommendations that were inconsistent with his actual residual functional capacity.

The Court finds that the hypothetical question posed to the vocational expert accurately reflected Plaintiff's vocational profile and residual functional capacity. As discussed above, in determining Plaintiff's residual functional capacity, the ALJ properly evaluated the entire record and declined to give controlling weight to the medical opinions to the extent that they were inconsistent with the record as a whole. Specifically, the ALJ properly found that the limitation opined by Dr. Hauk, that Plaintiff would need to recline or lie down during an eight-hour workday in excess of the typical work breaks, was not supported in the record. Accordingly, the ALJ did not err in declining to include in his hypothetical this limitation or any other limitations for which he found inadequate record support. See, e.g., Priel v. Astrue No. 10-566-cv, 453 Fed. Appx. 84, 87 (2d Cir. 2011) (finding that the ALJ properly declined to include in his

hypothetical question symptoms and limitations suggested by the treating physician that both conflicted with other substantial evidence in the record and were discounted in the residual functional capacity assessment).

With respect to Plaintiff's argument that the ALJ's residual functional capacity assessment was not specific as to the frequency of Plaintiff's need to alternate positions between sitting and standing, as required by SSR 96-9p, I find that the ALJ's residual functional capacity finding of "sit or stand alternatively," the ALJ's hypothetical question, and the testimony of the vocational expert were all consistent with an at-will sit/stand option, (Tr. at 15, 18, 44-5, 47, 49, 51), and accordingly, no greater specificity was required.  See Thompson v. Astrue, 442 Fed. Appx 804, 807 (4th Cir. 2011) (finding that an at-will sit/stand option required no greater specificity under SSR 96-9p); See also, Magee v. Astrue, No. 05-CV-413, 2008 WL 4186336, at *5 (N.D.N.Y. Sept. 9, 2008).

Here, although the ALJ's residual functional capacity finding did not specifically state the frequency with which Plaintiff must alternate between sitting and standing in terms of hours, the ALJ did determine that Plaintiff must be able to change positions alternatively. (Tr. 15, 18).  Based upon the substantial medical evidence in the record and the degree of flexibility with which Plaintiff would be able to alternate positions, I find that the

ALJ's hypothetical question was consistent with the applicable legal principles.

Because the ALJ's residual functional capacity finding was supported by substantial evidence in the record, the hypothetical posed to the vocational expert was complete. Therefore, I conclude that the ALJ's decision at Step Five was supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, I conclude that the ALJ's decision was supported by substantial evidence in the record and, therefore, grant the Commissioner's motion for judgment on the pleadings.  This Court denies Plaintiff's motion for judgment on the pleadings and dismisses Plaintiff's complaint with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                      S/Michael A. Telesca
                                      _____

                                      HONORABLE MICHAEL A. TELESCA
                                      United States District Judge

DATED:   December 12, 2012
          Rochester, New York